**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

MATTHEW BABKIRK,
Plaintiff,

v. Case No. 3:25-cv-865 (OAW)

ANGEL QUIROS, *et. al*,
Defendants.

**INITIAL REVIEW ORDER**

Self-represented Plaintiff Matthew Babkirk, a sentenced inmate formerly housed at Hartford Correctional Center ("HCC"),[1] has filed a complaint under 42 U.S.C. § 1983 against 54 prison officials alleging violations of several federal and state rights.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a government entity or officer or employee of a government entity. 28 U.S.C. § 1915A(a). Upon review, the court must dismiss the complaint, or any portion thereof, which fails to state a claim upon which relief may be granted, or which seeks monetary relief from a defendant who is immune therefrom. *See* 28 U.S.C. §§ 1915(e)(2)(b), 1915A(b).

Accordingly, the court has thoroughly reviewed all factual allegations in the complaint and has conducted an initial review of the allegations therein under 28 U.S.C. § 1915A. The court's conclusions are as follows.

---

[1] The Department of Correction ("DOC") website shows that Plaintiff is currently at a nursing home and has a special parole end date of December 27, 2026. *See* Department of Correction ("DOC"), *Offender Information Search*, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=301288 (last visited August 14, 2026). The court may take judicial notice of this website. *See*, *e.g.*, *Taveras v. Semple*, No. 3:15CV00531(SALM), 2023 WL 112848, at *1 n.1 (D. Conn. Jan. 5, 2023) (taking judicial notice of Connecticut DOC inmate locator).

## I. FACTUAL BACKGROUND

While the court does not set forth all the facts alleged in Plaintiff's complaint, it summarizes his basic factual allegations here to give context to the ruling below.

Plaintiff entered HCC on January 2, 2025, before which he suffered from chronic pain in his back and knees, and had sciatica. Compl., ECF No. 1 ¶ 1. Plaintiff was taking several medications for pain and told correctional officers in the HCC intake unit that he could not stand or walk. *Id.* Correctional Officer Cunningham attempted to help Plaintiff enter a holding cell after Plaintiff repeatedly told him that Plaintiff could not stand or walk and needed a wheelchair. *Id.* Cunningham ignored his pleas and grabbed him under his arms to move him into the holding cell. *Id.* While doing so, Cunningham dropped Plaintiff on the floor, causing him "excruciating pain" in his back, neck, and side. *Id.* Cunningham refused to call a "code white"—the code for a medical emergency—and instead pulled Plaintiff onto a bench outside the holding cell, summoned the attention of a nearby officer, and dragged Plaintiff into a holding cell across from the bench. *Id.* Plaintiff remained in the holding cell for over six hours without receiving medical attention. *Id.*

Nurse Mark Frank arrived with a wheelchair but did not help Plaintiff get into it. *Id.* Once Plaintiff was in it, Frank pushed him to the intake room and walked away. *Id.* While there, Plaintiff received his identification card and officers inventoried his property, including the pain medications he was taking before his imprisonment. *Id.* Officers then took Plaintiff to the strip search area, where they strip-searched Plaintiff while seated in his wheelchair. *Id.* The strip search caused Plaintiff "extreme pain." *Id.*

Medical staff wheeled Plaintiff to the medical unit after the strip search. *Id.* ¶ 2.

There, medical staff did not examine Plaintiff or provide him with medication, either from his own supply or from the prison infirmary. *Id.* Nurse Danielle completed a "reasonable accommodation form" so Plaintiff could receive a bottom bunk pass. *Id.* Danielle told him he would soon see APRN Hanna Sullivan. *Id.* However, he did not see her in the days that followed. *Id.* ¶¶ 3–4. A nurse touring Plaintiff's dorm, which was not ADA-compliant, refused to provide Plaintiff with any medical treatment. *Id.* ¶ 3. The nurse told him to "write sick call" and then walked away. *Id.*

Four days after Plaintiff arrived, prison staff gave Plaintiff bags in anticipation of his transfer to another prison, but a correctional officer later told him that his transfer was cancelled because he was in a wheelchair and could not stand or walk. *Id.* ¶ 5. Prison staff escorted him back to his dorm without a mattress, and unit officers provided him with a mattress approximately three hours later. *Id.* ¶ 6. Plaintiff was left in "excruciating pain" for the three hours without the mattress. *Id.*

Plaintiff remained in his non-ADA-compliant dorm for approximately one month until he moved into an ADA-complaint dorm. *Id.* ¶¶ 7–8. Plaintiff's new dorm had a handicapped restroom and shower. *Id.* ¶ 8. Plaintiff noticed that the handicapped restroom was locked, which prevented him from freely using it. *Id.* After arriving at his new dorm, Plaintiff complained to prison staff that the handicapped restroom remained locked, while the non-handicapped restroom was unlocked. *Id.* ¶ 9.

The remainder of the complaint largely relates to Plaintiff's lack of access to the locked handicapped restroom. For instance, Correctional Officers Dash and Brown ignored Plaintiff's request to open the restroom door, causing him to urinate on himself.

*Id.* ¶ 10. Correctional Officer Tehan refused to unlock the restroom door, causing Plaintiff to "almost soil[ ] himself." *Id.* ¶ 11. Correctional Officer Santiago opened the restroom door only after Plaintiff begged and pleaded with Tehan and Santiago. *Id.* Some officers repeatedly locked the handicapped restroom door, causing Plaintiff to "beg and plead" with them to unlock it. *Id.* ¶¶ 12–13. Other officers kept the handicapped restroom door locked overnight, *id.* ¶¶ 14–15, 18, 19, or during the day, *id.* ¶¶ 16–17, 20, 21.

Plaintiff spoke to Deputy Warden Foote about the lack of hot water in the handicapped restroom sink, the lack of light in the handicapped restroom at night, and the locked door to the handicapped restroom. *Id.* ¶ 22. Foote told Plaintiff that "it w[ould] be taken care of," and walked away when Plaintiff asked to be transferred to a facility that could accommodate his disabilities. *Id.* Foote and Lieutenant Vargas later told Plaintiff that the handicapped restroom door was to remain "open at all times." *Id.* ¶ 23. Plaintiff relayed this instruction to Correctional Officers Diaz and Alecia. *Id.* ¶ 25. Diaz told Plaintiff that "nobody tells [her] how to do [her] job." *Id.* Alecia finally opened the handicapped restroom door after Plaintiff pleaded with her. *Id.* Plaintiff filed a series of informal resolution requests and grievances related to the handicapped restroom. *Id.* ¶¶ 26–31, 33–40, 44–45, 48A, 49–58, 60–61, 63–66.

## II. <u>DISCUSSION</u>

Plaintiff brings numerous claims against 54 defendants, generally falling into two categories—deliberate indifference and ADA violations—some of which occurred during his intake. The other subset of his claims relates to a locked handicapped restroom.

As a preliminary matter, the court finds that these claims ought to be brought in separate actions, since Plaintiff's claims are unrelated. Federal Rule of Civil Procedure 20 permits joinder of multiple defendants in one action only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences, and any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Although each of Plaintiff's claims alleges violations of the same constitutional provisions, they deal with different conduct perpetrated by different defendants. Accordingly, it would be appropriate for the court to dismiss some of these claims pursuant to FRCP 21. However, in the interest of judicial efficiency, the court will address all these claims herein.

**A. <u>Claims</u>**

Plaintiff lists thirteen claims in his complaint. *See* Compl., ECF No. 1 at 64. But "[t]he mere mention of a constitutional provision is not sufficient to state a claim for relief under that provision." *Harris v. Doe*, No. 3:24-cv-151 (MPS), 2024 WL 1344697, at *3 (D. Conn. Mar. 29, 2024). Rather, pro se submissions "must be construed liberally and interpreted to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation modified), meaning that the face of the complaint must contain allegations that are sufficient to state a cause of action, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting that to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face . . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice") (citation modified).

Some claims listed in Plaintiff's complaint cannot withstand dismissal because, even if supported by sufficient facts, they are not cognizable in a § 1983 action. For instance, two claims allege violations of DOC Administrative Directives. Compl., ECF No. 1 at 64. "Mere failure to comply with administrative directives, however, does not adequately state a cognizable claim under section 1983." *Carter v. Doe*, No. 3:21-cv-185 (SRU), 2021 WL 2206523, at *3 (D. Conn. June 1, 2021). As such, any claim that prison officials violated Administrative Directives is not cognizable and must be dismissed. *Beavers v. Barone*, No. 3:19-cv-1492 (JCH), 2020 WL 6119402, at *5 (D. Conn. Oct. 16, 2020) (dismissing claim that defendants violated Administrative Directives).

Likewise, Plaintiff's claims for forgery and falsification of documents, obstruction of justice, and suppression of evidence, Compl., ECF No. 1 at 64, are not cognizable in a section 1983 action and also must be dismissed.[2] *See Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002) (affirming the district court's dismissal of plaintiff's "claims of sabotage, forgery, and perjury, which are crimes and therefore do not give rise to civil causes of action"); *Clissuras v. City of Univ. of New York*, 90 F. App'x 566, 568 n.1 (2d Cir. 2004) (summary order) (noting that "obstruction of justice" does not constitute a "private federal cause of action") (citation modified); *Mustafa v. Stanley*, No. 3:19-cv-1780 (VAB), 2020 WL 3404065, at *7 (D. Conn. June 19, 2020) (noting there is "no civil cause of action for obstruction of justice under Connecticut law").

[2] To the extent Plaintiff intends "suppression of evidence" to mean something other than a criminal offense, mere mention of the phrase is insufficient to state a cause of action. *Harris*, 2024 WL 1344697, at *3.

Plaintiff also asserts a gross negligence claim. Compl., ECF No. 1 at 64. "[N]egligence claims are not cognizable under § 1983," either. *Dutkiewicz v. Hyjeck*, 135 F. App'x 482, 484 (2d Cir. 2005) (summary order) (citing *Rendell-Baker v. Kohn,* 457 U.S. 830, 838 (1982)). The court may exercise supplemental jurisdiction over state law claims, *Wright v. Musanti*, 887 F.3d 577, 582 n.2 (2d Cir. 2018), but "Connecticut law does not recognize degrees of negligence and, consequently, does not recognize the tort of gross negligence as a separate basis of liability," *Coffey v. Choate Rosemary Hall*, No. 3:23-cv-897 (SVN), 2025 WL 2636615, at *8 (D. Conn. Sept. 12, 2025) (citation modified) (quoting *Riccio v. Bristol Hosp., Inc.*, 341 Conn. 772, 783–84 (2022)).

Other claims are potentially cognizable but duplicative. For instance, Plaintiff alleges a "violation of Eighth Amendment" claim and a "deliberate indifference" claim, Compl., ECF No. 1 at 64, but deliberate indifference to a prisoner on special parole violates the Eighth Amendment, *see Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (stating that a "prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment"); *Shabazz v. Sharr*, No. 3:19-cv-1233 (VLB), 2020 WL 646171, at *2–3 (D. Conn. Feb. 11, 2020) (considering conditions of confinement claim from a special parole inmate under the Eighth Amendment).

Plaintiff also alleges a "violation of the Fourteenth Amendment," Compl., ECF No. 1 at 64, but deliberate indifference claims brought by prisoners on special parole do not arise under the Fourteenth Amendment, *see Ruffino v. Lantz*, No. 3:08-cv-1521 (VLB), 2010 WL 908993, at *4 (D. Conn. Mar. 9, 2010) (noting that "claims of deliberate indifference to a serious medical condition or other serious threat to the health or safety

of a pretrial detainee are considered under the Fourteenth Amendment while claims of sentenced inmates are considered under the Eighth Amendment").

Plaintiff brings a claim for "reckless disregard for a basic human need," Compl., ECF No. 1 at 64, but the court construes this as referring to the subjective element of an Eighth Amendment deliberate indifference claim, *see Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) ("Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law . . . [which] requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result."). Thus, Plaintiff's "deliberate indifference," "Eighth Amendment," "Fourteenth Amendment," and "reckless disregard for basic human needs" claims are subsumed into an Eighth Amendment deliberate indifference claim.

Plaintiff also brings claims under "42 U.S. Section 12101" and "ADA Title II" and for "discrimination," Compl., ECF No. 1 at 64, but these are just different ways of saying the same thing, *see Hamilton v. Westchester Cnty.*, 3 F.4th 86, 88, 91 (2d Cir. 2021) (recognizing prisoner suit as "bringing claims under 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act of 1990 (the 'ADA'), 42 U.S.C. § 12101 *et seq.*, against defendants-appellants," and observing that "[a] plaintiff may base a Title II claim on any of three theories of liability: disparate treatment (intentional discrimination), disparate impact, or failure to make a reasonable accommodation") (citation modified). Accordingly, these claims are subsumed into a Title II ADA claim.

Thus, the court considers whether the complaint states an Eighth Amendment deliberate indifference claim and a Title II ADA claim. Compl., ECF No. 1 at 64.

**i. Eighth Amendment Deliberate Indifference Claim**

The court liberally construes plaintiff's complaint as alleging a deliberate indifference to serious medical needs claim. Deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prevail on a deliberate indifference claim, a plaintiff must present evidence of sufficiently harmful acts or omissions by a prison official. *Estelle*, 429 U.S. at 104–06. The prison official must have intended to deny or to unreasonably delay access to necessary medical care, or to wantonly inflict unnecessary pain. *Id.* Deliberate indifference is a high bar because "not every lapse in prison medical care will rise to the level of a constitutional violation; rather, the conduct complained of must shock the conscience or constitute a barbarous act." *Daniels v. Murphy*, No. 3:11-cv-286 (SRU), 2014 WL 3547235, at *8 (D. Conn. July 17, 2014) (citation modified).

A successful claim for deliberate indifference must satisfy objective and subjective elements. The objective component requires Plaintiff to "show that he actually did not receive adequate care and that the inadequacy in medical care was sufficiently serious." *Valdiviezo v. Boyer*, 752 F. App'x 29, 32 (2d Cir. 2018) (summary order). The court must "examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin*, 467 F.3d at 280. If a plaintiff was completely deprived of medical care, courts "examine whether the inmate's medical condition is sufficiently serious." *Id.* Whether a medical condition is "sufficiently serious"

depends on factors that include if "a reasonable doctor or patient would find [it] important and worthy of comment or treatment," if the condition "significantly affects an individual's daily activities," and if the condition causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (citation modified). On the other hand, if the plaintiff received inadequate medical treatment, "the seriousness inquiry is narrower," and focuses on "the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Salahuddin*, 467 F.3d at 280 (citation modified).

Under the subjective requirement of the deliberate indifference test, a defendant must have been "actually aware" that their actions or inactions would cause a substantial risk of harm to the plaintiff. *See id.* at 279–80 (citation omitted). "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Id.* at 280 (citation omitted). Recklessness requires more than mere negligence. "[M]ere disagreement over the proper treatment does not create a constitutional claim," and "negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Chance*, 143 F.3d at 703.

Plaintiff alleges that he was completely deprived of medical care, *see* Compl., ECF No. 1 ¶ 1, so the court must consider whether his medical conditions were "sufficiently serious," *Salahuddin*, 467 F.3d at 280. Plaintiff alleges he entered HCC suffering from sciatica and chronic pain in his back and knees. Compl., ECF No. 1 ¶ 1. He managed his pain with several medications, was unable to stand and walk, and needed a wheelchair to ambulate. *Id.* The court will presume, for purposes of initial review, that Plaintiff's medical conditions were sufficiently serious, in satisfaction of the objective

element. *See Fraser v. Hallmark*, No. 24-cv-63 (VDO), 2024 WL 1374719, at *3 (D. Conn. Apr. 1, 2024) (noting that "[a] 'sufficiently serious' deprivation can exist if the plaintiff suffers from an urgent medical condition that can cause death, degeneration, or extreme or chronic pain" (citing *Brock v. Wright*, 315 F.3d 158, 162–63 (2d Cir. 2003); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996))).

Having presumed Plaintiff's medical condition is sufficiently serious, the court next considers whether any defendant possessed a culpable mental state, in satisfaction of the subjective element. Here, Plaintiff alleges that Cunningham treated him roughly at intake. Cunningham attempted to drag him into a holding cell because he could not stand or walk. Compl., ECF No. 1 ¶ 1. Cunningham dropped him on the floor in the process, which caused him "excruciating pain" in his back, neck, and side. *Id.* Instead of calling a "code white," Cunningham propped him on a bench and dragged him into a nearby holding cell, where he was denied medical treatment for over six hours. *Id.* These actions are sufficient to satisfy the subjective element of a deliberate indifference to serious medical needs claim. *See Nieman v. Cheney*, No. 3:24-cv-01366 (KAD), 2024 WL 4880710, at *5 (D. Conn. Nov. 25, 2024) (plaintiff's "allegation that officials intentionally placed him alone in a cell instead of providing medical treatment . . . satisfies the subjective element of his deliberate indifference claim.").

Plaintiff next alleges that Frank arrived with a wheelchair but did not help him into it. Compl., ECF No. 1 ¶ 1. Once in the wheelchair, Frank merely pushed him into the intake room and walked away. This also satisfies the subjective element of a deliberate indifference to serious medical needs claim. *See Nieman*, 2024 WL 4880710, at *5.

Plaintiff then alleges that officers strip-searched him in his wheelchair, Compl., ECF No. 1 ¶ 1, that medical staff did not provide him with treatment after he arrived at the medical unit after the strip search, *id.* ¶ 2, that prison staff later placed him in a cell without a mattress, *id.* ¶ 6, housed within a dorm which was not ADA-compliant. *Id.* ¶¶ 7–8. These actions also might give rise to a deliberate indifference to serious medical needs claim, but Plaintiff does not allege which named defendants committed them. *See id.* ¶¶ 1–2, 6–8.

A plaintiff may only seek damages against defendants in their individual capacities if he can show their "personal involvement" in the alleged conduct. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). "Personal involvement may be shown by 'direct participation,' which requires in this context 'intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal.'" *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (quoting *Provost v. City of Newburgh,* 262 F.3d 146, 155 (2d Cir. 2001)). This is true as to supervisory officials, as well. *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) (a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability") (citation modified). Other than naming Cunningham and Frank, Plaintiff does not describe who strip-searched him, denied him medical treatment, or placed him in a cell without a mattress or in a non-ADA-complaint dorm. Thus, he may only proceed with Eighth Amendment deliberate indifference claims against Cunningham and Frank.

**ii. Title II ADA Claim**

The court also construes Plaintiff's complaint as alleging a claim under Title II of the ADA against DOC.[3] To state a claim under Title II of the ADA, Plaintiff must show that: 1) he is a qualified individual with a disability; 2) Defendant is an entity subject to the act; and 3) he was denied participation in or benefit from Defendant's services, programs, or activities, or that he was otherwise discriminated against because of his disability. *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016). There are "three available theories" of discrimination which can establish the third prong of an ADA claim: "(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord,* 591 F.3d 37, 43 (2d Cir. 2009).

On initial review, the court presumes Plaintiff's medical conditions qualify him as an individual with a disability. *See Cosby v. Rusi*, No. 3:20-cv-459 (MPS), 2020 WL 3577482, at *5 (D. Conn. July 1, 2020) (assuming that plaintiff who had "ankle-foot orthosis and use[d] a wheelchair" was a "qualified individual" under the ADA). Plaintiff's allegations also satisfy the second requirement of an ADA claim, as they function as duplicative claims against the DOC. *See Lenti v. Connecticut*, No. 3:20-CV-127 (SRU), 2020 WL 2079462, at *3 (D. Conn. Apr. 30, 2020) (noting that "[s]tate prisons are public

---

[3] To the extent Plaintiff attempts to bring claims under the ADA against defendants in their individual capacities, he cannot do so. *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (holding that ADA does not provide "for individual capacity suits against state officials"). Accordingly, any ADA claims brought against Defendants in their individual capacities are dismissed. Further, claims brought against defendants in their official capacities function as claims against their employer (DOC) and thus are redundant. *Id.* at 107 (noting that suits against individual state employees in their official capacities function as claims against their employer) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).

entities within the meaning of the ADA"); *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) ("State prisons fall squarely within the statutory definition of public entity, which includes any department, agency, special purpose district, or other instrumentality of a State or States or local government") (citation modified). As to the third element, Plaintiff does not allege disparate treatment or impact during intake or the days that followed. Rather, Plaintiff appears to allege that prison officials failed to make a reasonable accommodation for Plaintiff's disability. *See* Compl., ECF No. 1 ¶ 1.

When evaluating a reasonable accommodation claim, the court asks "whether a plaintiff with disabilities as a practical matter was denied meaningful access to services, programs or activities to which he or she was legally entitled." *Wright*, 831 F.3d at 72 (citation modified). "Services, programs or, activities" include "recreational activities, medical services, and educational and vocational programs[.]" *Yeskey*, 524 U.S. at 210 (citation modified). "A plaintiff need not demonstrate that [he] is entirely precluded from accessing a benefit; rather, difficulty in accessing a benefit is sufficient to sustain a reasonable accommodation claim." *Goode v. Salias*, No. 3:24-cv-1010, 2024 WL 3718268, at *7 (D. Conn. Aug. 8, 2024) (citation modified).

Because "the ADA must be broadly construed to effectuate its purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," *Noel v. New York City Taxi & Limousine Comm'n*, 687 F.3d 63, 68 (2d Cir. 2012) (citation modified), the court considers a wheelchair as part of the "medical services" a prison typically provides. The complaint suggests that Plaintiff was denied meaningful access to that service, as well as access to the handicapped restroom,

as Officer Cunningham ignored Plaintiff's request for a wheelchair, and several officers ignored Plaintiff's request to unlock the restroom. *See* Compl., ECF No. 1 ¶ 1. As to the bottom bunk pass and mattress, he was ultimately provided with said items without any significant temporal delay. *Id.* ¶¶ 2, 6; *Wright v. N.Y. State Dep't of Corrs.*, 831 F.3d 64, 73–76 (2d Cir. 2016) (explaining prison officials' obligations to provide meaningful access to prison services and noting a temporal aspect to meaningful access).

Accordingly, as the court construes the ADA claim as being brought against DOC, it hereby directs the Clerk of Court to please add DOC as a Defendant to this action; the official capacity claims against the 54 defendants hereby are dismissed as redundant to the continuing claim against DOC; and Plaintiff may proceed with his ADA claim (against DOC) related to his wheelchair request and the locked bathroom.

**iii. Relief Sought**

Plaintiff sues all defendants in their official and individual capacities, and he seeks damages. Compl., ECF No. 1 at 66–68.[4] But Plaintiff may not pursue damages from any defendant in their official capacity because they are all state employees. *Quinones v. Quiros*, No. 3:24-CV-1805 (OAW), 2025 WL 1445860, at *2 (D. Conn. May 20, 2025) ("DOC employees may not be sued in their official capacity for money damages in federal court."). Thus, Plaintiff may only pursue claims for damages against Defendants in their individual capacities.

[4] Though the complaint references "declaratory" and "injunctive relief," Plaintiff lists dollar amounts next to these requests. Compl., ECF No. 1 at 68. Thus, the court construes the complaint as seeking only damages.

## III. ORDERS

(1) Plaintiff may seek damages from Cunningham and Mark in their individual capacities on his Eighth Amendment deliberate indifference to serious medical needs claim and against DOC on his ADA claim related to his wheelchair request and the locked bathroom. The court respectfully directs the Clerk of Court to please add DOC as a Defendant to this action. All other claims are dismissed, and all other defendants are terminated.

(2) Plaintiff may amend the complaint on or before **October 13, 2026. An amended complaint, if filed, will completely replace the complaint, and the court will not consider any allegations made in the original complaint in evaluating any amended complaint.** The court will review any amended complaint to determine whether it may proceed to service of process.

(3) If Plaintiff wishes to proceed only on the claims noted above, he may file a notice on the docket saying so, at which point the case immediately will proceed to service. If nothing is filed on the docket by **October 13, 2026,** the court will presume Plaintiff wishes to proceed only on these claims.

(4) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1 provides that he MUST notify the court. Failure to do so can result in dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one

pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Defendant or defense counsel of his new address.

(5) Plaintiff shall utilize the Prisoner Electronic Filing Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. Under local court rules, discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on Defendant's counsel by regular mail.

**IT SO ORDERED** at Hartford, Connecticut, this 14th day of August, 2026.

/s/
Omar A. Williams
United States District Judge